GEORGE M. & JOAN E. HAMILTON, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Hamilton v. Commissioner
Docket No. 11258-83.
United States Tax Court
T.C. Memo 1986-21; 1986 Tax Ct. Memo LEXIS 586; 51 T.C.M. (CCH) 290; T.C.M. (RIA) 86021; January 16, 1986. *586 Held: Petitioner-husband was an itinerant electrician whose tax home traveled with him. Hence, travel expenses are not deductible. Held further, petitioners failed to prove that moneys paid to petitioner-husband's former wife constituted deductible alimony. George M. Hamilton, pro se. Christine Colley, for the respondent. WHITAKER
MEMORANDUM FINDINGS OF FACT AND OPINION WHITAKER, Judge: Respondent determined a deficiency in the 1979 income tax liability of petitioners in the amount of $3,442. After concessions, the issues in dispute are the deductibility of travel expenses in the amount of $9,279 and the sum of $1,200 claimed by petitioners to be alimony payable to George M. Hamilton's (Hamilton's) former wife. For convenience, our findings of fact and opinion are combined. Some of the facts have been stipulated and they are so found. At the time of the filing of the petition in this case, petitioners George M. & Joan E. Hamilton were living in a trailer park in Port Gibson, Mississippi. Petitioners apparently contend, however, that their legal residence at all times is and has remained in Cocoa, Florida. During all of 1979, petitioners were husband and wife. Hamilton was *588 a member of the International Brotherhood of Electrical Workers, Local 756, the headquarters of which was in Daytona Beach, Florida in that year. The expense deduction involved food, lodging, car expense, employer travel allowance reimbursement, and depreciation on a travel trailer. Hamilton was divorced from his first wife by order of the Circuit Court of the 18th Judicial Circuit, Brevard County, Florida in Civil Action No. 74-2880-CA-01-F by decree dated October 11, 1974. That decree incorporated and approved a property settlement and child custody agreement executed on October 7, 1974 between Hamilton and his former wife, but that agreement is not before the Court. The divorce decree directs that the sum of $100 per month be paid by Hamilton to his former wife plus costs for a period commencing on November 1, 1974 and terminating on October 1, 1975, for "rehabilitative alimony." Apparently, the property settlement required the payment of the sum of $7,000 in periodic installments. The payments, claimed by petitioners as deductible alimony in the year 1979, represent 12 monthly installments of $100 each on the $7,000 property settlement. [1]
*589 The burden of proof on this issue, as well as on the travel expenses, is upon petitioners. Rule 142. [2] The evidence before the Court appears to indicate that the $1,200 claimed as "alimony" by petitioners in 1979 was in reality paid on a property settlement and hence would be nondeductible. There are no facts in this record to indicate how the former Mrs. Hamilton treated the receipt of this sum of $1,200 in the year 1979 and we cannot on this record definitively determine whether or not this payment would constitute "alimony or separate maintenance" for purposes of section 71(b)(1) and section 215, but the indication in the decree of divorce is to the contrary. In any event, petitioners, who have the burden of proof on this issue (Rule 142), have failed to show error in respondent's disallowance of this deduction. We find for respondent on this issue. Hamilton contends that he has been a resident of Cocoa, Florida since the year 1954. In 1964, Hamilton purchased a three *590 bedroom, two bath house in Cocoa, Florida, which during 1979 and apparently prior and subsequent thereto was occupied by his son and his son's wife. His son paid the utilities, although the utilities were still in Hamilton's name, but did not pay any rent on the house. Petitioners paid property taxes on the house. Petitioners in 1979 and thereafter had Florida license tags on their motor vehicle and both petitioners had and have Florida drivers licenses. During 1979, and for years prior thereto and thereafter, there were many more members of Hamilton's local union than there was work available for electricians in that part of Florida. The members of the local were assigned to work in that local's area in Florida on the basis of their position on the work list. Available work was assigned to those members of the local at the top of the list. Whenever a work assignment was completed that member's name was placed at the bottom of the list. Remaining members of that local were forced to seek work elsewhere. Hamilton worked in Florida from October 1977 until April 1978 at which time he was laid off and his name went back to the bottom of the work list. From 1977 through 1981, *591 petitioner's work locations and the duration of his jobs are indicated by the following table: 11/14/77
4/13/78
Cape Canaveral, Florida
4/27/78
5/26/78
Midland, Michigan
6/22/78
10/31/78
Craig, Colorado
10/78
5/79
California
5/28/79
10/25/79
Everett, Washington
11/10/79
12/7/79
Sulphur, Louisiana
1/10/80
2/29/80
San Antonio, Texas
3/80
5/80
Las Vegas, Nevada
7/8/80
9/26/80
Missoula, Montana
10/16/80
11/4/80
Kennedy Space Center, Florida
11/17/80
5/19/81
Westlake, Louisiana
Thus, from April 1978 when Hamilton was laid off from Cape Canaveral to October 1980 when he started to work at the Kennedy Space Center, Hamilton worked exclusively outside of Florida. He and Mrs. Hamilton lived in the travel trailer, depreciation on which is included as an element of travel expense. The record is silent as to whether, during the short period of time in 1977-1978 and again in 1980, petitioners occupied Hamilton's house in Cocoa, Florida. We assume, therefore, that they did not during these periods of time occupy the house but instead continued to live in Hamilton's travel trailer in which they lived during the period when Hamilton was working *592 outside the State of Florida. During this period, Hamilton kept in touch with his union's business agent by telephone. Hamilton's contention is that he maintained a home in the State of Florida and maintained another home "on the road" i.e., his house trailer. However, the only expense incurred by Hamilton with respect to his Florida house was for property taxes and the mortgage payments. Hamilton contends that his work at each place was temporary and, thus, that he is entitled to deduct his out-of-town travel expenses. Respondent, on the other hand, argues that Hamilton was an itinerant worker with neither a regular place of business nor a regular place of abode. Personal expenses are ordinarily not deductible. Section 262. Section 162(a)(2), however, allows the taxpayer to deduct certain traveling expenses paid or incurred while away from home in the pursuit of a trade or business if he can establish the traveling expenses were: (1) reasonable and necessary; (2) incurred while "away from home"; and (3) incurred in pursuit of a trade or business. ; . *593 This Court has held that a taxpayer's "home" for the purposes of section 162(a)(2) is the vicinity of his principal place of business whenever his personal residence is not located in the same vicinity. ; .There is, however, an exception to this rule when a taxpayer with a well-established tax home accepts temporary employment as opposed to indefinite employment elsewhere. In this context, temporary employment means the sort of employment in which termination within a short period of time could be logically expected and foreseen. , affg. a Memorandum Opinion of this Court; . See also . On the other hand, whenever termination of employment cannot be expected or foreseen within a fixed or reasonably short period of time, the taxpayer's tax home shifts to such place of employment so that he cannot satisfy the "away from home" requirement, . *594 While this record is not sufficiently complete to be able to determine factually whether or not some or all of the jobs Hamilton had during the year 1979 were temporary, it is entirely possible that some or all of them were, but in this context that is beside the point. The obvious precondition to a taxpayer being "away from home" is that he have a home in the first instance. In the context of section 162(a)(2) the taxpayer must incur substantial continuing living expenses at a permanent place of residence. . Such requirement is in accord with the purpose underlying section 162(a)(2), that being to mitigate the burden falling upon the taxpayer who, due to his business, must maintain two places of abode and thereby incur additional and duplicate living expenses. * * * [Fn. ref. omitted.] [.] Whether or not Cocoa, Florida has ever been the tax home of Hamilton, we do not know. We do find that on the basis of this record it was not his tax home at any time between the fall of 1977 and the end of 1981. As we said in Bochner, by reason of *595 the lack of employment opportunities in the vicinity of Cocoa, Florida and in the regional area covered by Hamilton's own local, his retention of his house in Cocoa did not make that his tax home. His tax home was, in fact, his trailer which traveled with him and the fact that he paid property taxes and mortgage payments on his house in Cocoa does not constitute the kind of dual living expenses which the "away from home concept" is designed to cover. . See also , affd. , and . We hold for respondent on this issue. Decision will be entered under Rule 155.
Footnotes
1. The amortization schedule applying to the $7,000 payments, which is in evidence, shows that out of the $1,200 paid in 1979, $407.17 was applied to interest. Petitioners 1979 income tax return reflects an interest deduction in the amount of $407 under the heading "home mortgage." During the trial, however, Hamilton testified that interest on the home mortgage was $396.21, and we note that petitioners' 1979 Schedule A shows an interest deduction of $396. Hence, petitioners apparently claimed a double deduction to the extent of $407, which amount is deductible as interest but not as alimony.↩
2. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue, and all rule references are to the Tax Court Rules of Practice and Procedure.↩